## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| STEWART SCHMIER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MOLSON COORS BREWING COMPANY, PETER H. COORS, GEOFFREY E. MOLSON, MARK R. HUNTER, TRACEY I. JOUBERT, PETER J. COORS, ANDREW T. MOLSON, BETTY K. DEVITA, CHARLES M. HERINGTON, DOUGLAS D. TOUGH, FRANKLIN W. HOBBS, H. SANFORD RILEY, IAIN J.G. NAPIER, LOUIS VACHON, MARY LYNN FERGUSON-MCHUGH, BRIAN C. TALBOLT, and ROGER G. EATON<br><br>Defendants. | Case No: 1:19-cv-00898<br><br><br><br><br>JURY TRIAL DEMANDED |

---

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.     Plaintiff Stewart Schmier ("Plaintiff") by and through his undersigned counsel, respectfully submits this Verified Stockholder Derivative Complaint on behalf of nominal defendant Molson Coors Brewing Company ("Molson Coors" or the "Company") against certain of its directors and officers named herein (the "Individual Defendants" as defined below).  Plaintiff bases his allegations on personal knowledge as to his own acts and on information and belief as to all other allegations, based upon due investigation by counsel, including, among other things, review and analysis of: (a) public filings made by Molson Coors with the United States Securities and Exchange Commission ("SEC"); (b) press releases, postings on Molson Coors' website and

1

other publications caused or allowed to be disseminated by the Company; (c) news articles, analyst reports and other public documents; and (d) public filings in the related federal securities class action lawsuit.

## NATURE OF THE ACTION

2.      This is a shareholder derivative action brought for the benefit of Molson Coors to remedy wrongdoing by certain of the Company's current and former officers and directors from February 14, 2017 through the present (the "Relevant Period").

3.      Molson Coors is one of the world's largest brewers with a diverse portfolio of owned and partner brands. In February 2005, Adolph Coors Company merged with Molson Inc. Upon completion of the merger, Adolph Coors Company changed its name to Molson Coors Brewing Company.

4.      On February 12, 2019, before the market opened, Molson Coors announced that its "previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon."

5.      Thus, Plaintiff rightfully brings this action derivatively on behalf of Molson Coors to vindicate the Company's rights against the Individual Defendants named herein, and to hold them responsible for the damages that they, as wayward fiduciaries, have caused the Company.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

7.      This Court has personal jurisdiction over each of the Defendants because each is either a corporation conducting business and maintaining operations in this District, or is an

individual who is either present in this District for jurisdictional purposes, or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this district pursuant to 28 U.S.C.§ 1391 because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  Moreover, one or more of the Defendants either reside in or maintains executive offices in this district, and Defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

9.      Plaintiff is a shareholder of Molson Coors and has continuously held Molson Coors common stock since January 2014.  Plaintiff is a citizen of New Jersey.

10.      Nominal Defendant Molson Coors manufactures and sells beer and other beverage products in the United States, Canada, Europe, and internationally. The Company is a Delaware corporation. The principal executive offices of the Company's U.S. segment are located at 1801 California Street, Suite 4600, Denver, Colorado.  Nominal Defendant Molson Coors is a citizen of Delaware and Colorado.

11.      Defendant Peter H. Coors ("Coors") has served as Director of the Company since 2005 and as Chairman since May 2017.  Upon information and belief, Coors is a citizen of Colorado.

12.      Defendant Geoffrey E. Molson ("Molson") has served as a Director of the Company since 2009 and as Vice Chairman of the Board since May 2017.  Upon information and belief, Molson is a citizen of Colorado.

13.     Defendant Mark R. Hunter ("Hunter") has served as the Chief Executive Officer ("CEO") and President of the Company since January 1, 2015, and as a director of the Company's Board since 2015. Upon information and belief, Hunter is a citizen of Colorado.

14.     Defendant Tracey I. Joubert ("Joubert") has served as Company's Chief Financial Officer ("CFO") since November 17, 2016.  Upon information and belief, Joubert is a citizen of Wisconsin.

15.     Defendant Peter J. Coors ("J. Coors") has served as a Director of the Company since 2015. Upon information and belief, J. Coors is a citizen of Colorado.

16.     Defendant Andrew T. Molson ("T. Molson") has served as a Director of the Company since 2005. Upon information and belief, T. Molson is a citizen of Canada.

17.     Defendant Betty K. DeVita ("DeVita") has served as the Chief Commercial Officer for the Company since 2016.  DeVita serves on the Company's Audit Committee.  Upon information and belief, DeVita is a citizen of Florida.

18.     Defendant Charles M. Herington ("Herington") has served as a Director for the Company since 2005.  Herington serves on the Company's Audit Committee.  Upon information and belief, Herington is a citizen of Florida.

19.     Defendant Douglas D. Tough ("Tough") has served as a Director for the Company since 2012.  Upon information and belief, Tough is a citizen of Florida.

20.     Defendant Franklin W. Hobbs ("Hobbs") has served as a Director for the Company since 2005. Hobbs serves on the Company's Audit Committee.  Upon information and belief, Hobbs is a citizen of New York.

21.     Defendant H. Sanford Riley ("Riley") has served as a Director for the Company since 2005.  Upon information and belief, Riley is a citizen of Canada.

22.     Defendant Iain J.G. Napier ("Napier") has served as a Director for the Company since 2008.  Upon information and belief, Napier is a citizen of the United Kingdom.

23.     Defendant Louis Vachon ("Vachon") has served as a Director for the Company since 2012.  Upon information and belief, Vachon is a citizen of Vermont.

24.     Defendant Mary Lynn Ferguson-McHugh ("Ferguson-McHugh") has served as a Director for the Company since 2015.  Upon information and belief, Ferguson-McHugh is a citizen of Ohio.

25.     Defendant Roger G. Eaton ("Eaton") has served as a Director for the Company since 2012.  Eaton serves on the Company's Audit Committee.  Upon information and belief, Eaton is a citizen of Texas.

26.     Defendant Brian C. Tabolt ("Tabolt") served as the Company's Chief Accounting Officer during the Relevant Period.  Upon information and belief, Tabolt is a citizen of Colorado.

27.     Defendants Eaton, DeVita, Hobbs, and Herington are sometimes referred to herein as the "Audit Committee Defendants."

28.     Defendants, Coors, Molson, J. Coors, T. Molson, Hunter, DeVita, Herington, Tough, Hobbs, Riley, Napier, Vachon, Ferguson-McHugh, Talbolt Joubert and Eaton are sometimes herein referred to collectively as the "Individual Defendants."

29.     Each of the Individual Defendants:

  a.     directly participated in the management of the Company;

  c.     was directly involved in the day-to-day operations of the Company at the highest levels; was privy to confidential proprietary information concerning the Company and its business and operations;

  d.     was directly or indirectly involved in drafting, producing, reviewing and/or

disseminating the false and misleading statements and information alleged herein;

    e.    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f.    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    g.    approved or ratified these statements in violation of the federal securities laws.

## SUBSTANTIVE ALLEGATIONS

### Background

30.    Molson Coors is one of the world's largest brewers with a diverse portfolio of owned and partner brands, including global priority brands *Blue Moon, Coors Banquet, Coors Light, Miller Genuine Draft, Miller Lite,* and *Staropramen*, regional brands *Carling*, *Molson Canadian* and other leading country-specific brands, as well as craft and specialty beers such as *Creemore Springs*, *Cobra*, *Doom Bar, Henry's Hard* and *Leinenkugel's*.

31.    Coors was incorporated in June 1913 under the laws of the state of Colorado. In October 2003, Coors merged with and into Adolph Coors Company, a Delaware corporation. In February 2005, Adolph Coors Company merged with Molson Inc. Upon completion of the merger, Adolph Coors Company changed its name to Molson Coors Brewing Company.

### Individual Defendants' False and Misleading Relevant Period Statements

32.    On February 14, 2017, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by the Individual Defendants. The 2016 10-K contained signed

certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Hunter and Joubert attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2016 10-K stated that the Company's internal control over financial reporting was effective, excluding the internal control over financial reporting at its recently acquired stake in MillerCoors LLC.

33.    The 2016 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.125 billion for the period covered by the 2016 10-K. The 2016 10-K stated, in relevant part:

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| Sales | $ 6,597.4 | $ 5,127.4 | $ 5,927.5 |
| Excise taxes | (1,712.4 ) | (1,559.9 ) | (1,781.2 ) |
| Net sales | 4,885.0 | 3,567.5 | 4,146.3 |
| Cost of goods sold | (3,003.1 ) | (2,163.5 ) | (2,493.3 ) |
| Gross profit | 1,881.9 | 1,404.0 | 1,653.0 |
| Marketing, general and administrative expenses | (1,597.3 ) | (1,051.8 ) | (1,163.9 ) |
| Special items, net | 2,523.9 | (346.7 ) | (324.4 ) |
| Equity income in MillerCoors | 500.9 | 516.3 | 561.8 |
| Operating income (loss) | 3,309.4 | 521.8 | 726.5 |
| Other income (expense), net | | | |
| Interest expense | (271.6 ) | (120.3 ) | (145.0 ) |
| Interest income | 27.2 | 8.3 | 11.3 |
| Other income (expense), net | (29.7 ) | 0.9 | (6.5 ) |
| Total other income (expense), net | (274.1 ) | (111.1 ) | (140.2 ) |
| Income (loss) from continuing operations before income taxes | 3,035.3 | 410.7 | 586.3 |
| Income tax benefit (expense) | (1,050.7 ) | (51.8 ) | (69.0 ) |
| Net income (loss) from continuing operations | 1,984.6 | 358.9 | 517.3 |
| | | | |
| Income (loss) from discontinued operations, net of tax | (2.8 ) | 3.9 | 0.5 |
| Net income (loss) including noncontrolling interests | 1,981.8 | 362.8 | 517.8 |
| Net (income) loss attributable to noncontrolling interests | (5.9 ) | (3.3) | (3.8 ) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ 1,975.9 | $ 359.5 | $ 514.0 |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share: | | | |

| | | | | | |
|---|---|---|---|---|---|
| From continuing operations | $ | 9.33 | $ | 1.92 $ | 2.78 |
| From discontinued operations | | (0.01 ) | | 0.02 | |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share | $ | 9.32 | $ | 1.94 $ | 2.78 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share: | | | | | |
| From continuing operations | $ | 9.27 | $ | 1.91 $ | 2.76 |
| From discontinued operations | | (0.01 ) | | 0.02 | |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share | $ | 9.26 | $ | 1.93 $ | 2.76 |
| Weighted-average shares—basic | | 212.0 | | 185.3 | 184.9 |
| Weighted-average shares—diluted | | 213.4 | | 186.4 | 186.1 |
| Amounts attributable to Molson Coors Brewing Company | | | | | |
| Net income (loss) from continuing operations | $ | 1,978.7 | $ | 355.6 $ | 513.5 |
| Income (loss) from discontinued operations, net of tax | | (2.8 ) | | 3.9 | 0.5 |
| Net income (loss) attributable to Molson Coors Brewing [] $ | 1,975.9 | | $ | 359.5$ | 514.0 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| Net income (loss) including noncontrolling interests | $          1,981.8$ | 362.8  $ | 517.8 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | (234.4 ) | (918.4) | (849.8 ) |
| Unrealized gain (loss) on derivative instruments | 9.7 | 20.9 | 7.0 |
| Reclassification of derivative (gain) loss to income | (3.0 ) | (5.4) | 2.3 |
| Pension and other postretirement benefit adjustments | 62.3 | 33.6 | (136.8 ) |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 31.4 | 37.5 | 26.2 |
| Reclassification of historical share of MillerCoors' AOCI loss | 258.2 | | |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | 22.3 | 34.3 | (102.2 ) |
| Total other comprehensive income (loss), net of tax | 146.5 | (797.5) | (1,053.3 ) |
| Comprehensive income (loss) | 2,128.3 | (434.7) | (535.5 ) |
| Comprehensive (income) loss attributable to noncontrolling interests | (3.0 ) | (2.3) | (3.8 ) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $          2,125.3 $ | (437.0 )  $ | (539.3 ) |

34.     On February 14, 2018, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K was signed by all the Individual Defendants except Riley. The 2017 10-K contained signed SOX certifications by Hunter and Joubert attesting to the accuracy of financial

reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2017 10-K stated that the Company's internal control over financial reporting was effective as of December 31, 2017.

35.     The 2017 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.126 billion for the period covered by the 2017 10-K. The 2017 10-K stated, in relevant part:

| | | For the Years Ended | | |
|---|---|---|---|---|
| | | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| Sales | $ | 13,471.5 | $6,597.4 $ | 5,127.4 |
| Excise taxes | | (2,468.7 ) | (1,712.4 ) | (1,559.9 ) |
| Net sales | | 11,002.8 | 4,885.0 | 3,567.5 |
| Cost of goods sold | | (6,217.2 ) | (2,987.5 ) | (2,131.6 ) |
| Gross profit | | 4,785.6 | 1,897.5 | 1,435.9 |
| Marketing, general and administrative expenses | | (3,032.4 ) | (1,589.8 ) | (1,038.3 ) |
| Special items, net | | (28.1 ) | 2,522.4 | (346.7 ) |
| Equity income in MillerCoors | | — | 500.9 | 516.3 |
| Operating income (loss) | | 1,725.1 | 3,331.0 | 567.2 |
| Other income (expense), net | | | | |
| Interest expense | | (349.3 ) | (271.6 ) | (120.3 ) |
| Interest income | | 6.0 | 27.2 | 8.3 |
| Other income (expense), net | | (0.1 ) | (29.7 ) | 0.9 |
| Total other income (expense), net | | (343.4 ) | (274.1 ) | (111.1 ) |
| Income (loss) from continuing operations before income taxes | | 1,381.7 | 3,056.9 | 456.1 |
| Income tax benefit (expense) | | 53.2 | (1,055.2 ) | (61.5 ) |
| Net income (loss) from continuing operations | | 1,434.9 | 2,001.7 | 394.6 |
| Income (loss) from discontinued operations, net of tax | | 1.5 | (2.8 ) | 3.9 |
| Net income (loss) including noncontrolling interests | | 1,436.4 | 1,998.9 | 398.5 |
| Net (income) loss attributable to noncontrolling interests | | (22.2 ) | (5.9 ) | (3.3 ) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ | 1,414.2 $ | 1,993.0 $ | 395.2 |
| | | | | |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share: | | | | |
| From continuing operations | $ | 6.56 $ | 9.41 $ | 2.11 |
| From discontinued operations | | 0.01 | (0.01 ) | 0.02 |

| | | | | | |
|---|---|---|---|---|---|
| Basic net income (loss) attributable to Molson Coors Brewing Company per share | $ | 6.57 | $ | 9.40 | $ 2.13 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share: | | | | | |
| From continuing operations | $ | 6.52 | $ | 9.35 | $ 2.10 |
| From discontinued operations | | 0.01 | | (0.01 ) | 0.02 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share | $ | 6.53 | $ | 9.34 | $ 2.12 |
| Weighted-average shares—basic | | 215.4 | | 212.0 | 185.3 |
| Weighted-average shares—diluted | | 216.5 | | 213.4 | 186.4 |
| Amounts attributable to Molson Coors Brewing Company | | | | | |
| Net income (loss) from continuing operations | $ | 1,412.7 | $ | 1,995.8 | $ 391.3 |
| Income (loss) from discontinued operations, net of tax | | 1.5 | | (2.8 ) | 3.9 |
| Net income (loss) attributable to Molson Coors Brewing Company | $ | 1,414.2 | $ | 1,993.0 | $ 395.2 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| Net income (loss) including noncontrolling interests | $ 1,436.4 | $ 1,998.9 | $ 398.5 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | 686.7 | (234.4 ) | (918.4 ) |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | (133.4 ) | 9.7 | 20.9 |
| Reclassification of derivative (gain) loss to income | 1.3 | (3.0 ) | (5.4 ) |
| Pension and other postretirement benefit adjustments | 145.7 | 53.8 | 19.3 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 3.6 | 22.8 | 16.1 |
| Reclassification of historical share of MillerCoors' AOCI loss | — | 258.2 | |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | 10.4 | 22.3 | 34.3 |
| Total other comprehensive income (loss), net of tax | 714.3 | 129.4 | (833.2 ) |
| Comprehensive income (loss) | 2,150.7 | 2,128.3 | (434.7 ) |
| Comprehensive (income) loss attributable to noncontrolling interests | (24.7 ) | (3.0 ) | (2.3 ) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 2,126.0 | $ 2,125.3 | $ (437.0 ) |

36.     The statements referenced above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations, which were known to the Individual Defendants or recklessly disregarded by them.   Specifically, the Individual Defendants made false and/or misleading

statements and/or failed to disclose that: (i) Molson Coors failed to properly reconcile the outside basis deferred income tax liability for Molson Coors' investment in its MillerCoors, LLC partnership; (ii) consequently, Molson Coors misreported net income in its consolidated financial statements for the fiscal years ending December 31, 2016 and December 31, 2017, resulting in an overall downward revision to net income; (iii) Molson Coors lacked adequate internal controls over financial reporting; and (iv) as a result, Defendants' statements about Molson Coors' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

37.     On February 12, 2019, before the market opened, Molson Coors announced that its "previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon." The Company's announcement stated, in relevant part:

> On February 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of Molson Coors Brewing Company (the "Company"), after discussion with management of the Company and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, concluded that the ***Company's previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon.***
>
> ***As part of preparing its 2018 financial statements, the Company identified errors in the accounting for income taxes related to the deferred tax liabilities for its partnership in MillerCoors, LLC ("MillerCoors"). Upon the closing of the acquisition of the remaining interest in MillerCoors (the "Acquisition") in the fourth quarter of 2016 and completion of the related deferred income tax calculations, the Company did not reconcile the outside basis deferred income tax liability for the investment in the partnership to the book-tax differences in the underlying assets and liabilities within the partnership.*** As a result of completing this reconciliation as part of preparing its 2018 consolidated financial statements, the Company identified a difference related to historical financial statements and concluded that the previously issued 2017 and 2016 consolidated

financial statements were misstated. ***Accordingly, the Company is restating its consolidated financial statements as of and for the year ended December 31, 2016 to increase its deferred tax liabilities and deferred tax expense by $399.1 million, with a corresponding decrease in net income and earnings per share. The Company's consolidated financial statements as of and for the year ended December 31, 2017 are also being restated to reflect the revaluation of such deferred liabilities due to the U.S. Tax Cuts and Job Act of 2017 and to correct further insignificant income tax errors resulting in a decrease to deferred tax liabilities and deferred tax expense of $151.4 million, resulting in corresponding increases to the Company's net income and earnings per share. These adjustments resulted in an aggregate $247.7 million increase to the Company's deferred tax liabilities and corresponding decrease in retained earnings and total equity as of December 31, 2017.***

\*        \*        \*

***In connection with the restatement, management of the Company has determined that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2018 relating to the design and*** maintenance ***of effective controls over the completeness and accuracy of the accounting for and disclosure of the income tax effects of acquired partnership interests.*** Specifically, the Company did not design appropriate controls to identify and reconcile deferred income taxes associated with the accounting for acquired partnership interests. As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of December 31, 2018, and the Company's management has concluded that its internal control over financial reporting was not effective as of December 31, 2018.

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP.

(Emphasis added.)

38.    That same day, the Company filed restated consolidated financial statements for the fiscal years ended December 31, 2016 and December 31, 2017 in the Company's annual report for the fiscal year ending December 31, 2018 (the "2018 10-K"). The Company's 2018 10-K stated, in relevant part:

| | 0.6 | 1.1 | 1.4 |
|---|---|---|---|
| Dilutive effect of share-based awards | 0.6 | 1.1 | 1.4 |
| Diluted | 216.6 | 216.5 | 213.4 |
| | | | |
| Anti-dilutive securities excluded from computation of diluted EPS | 0.8 | 0.3 | 0.1 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Net income (loss) including noncontrolling interests | $ 1,134.6 | $ 1,587.8 | $ 1,599.8 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | (359.0) | 686.7 | (234.4) |
| Reclassification of cumulative translation adjustment to income | 6.0 | — | — |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | 10.9 | (133.4) | 9.7 |
| Reclassification of derivative (gain) loss to income | 2.5 | 1.3 | (3.0) |
| Pension and other postretirement benefit adjustments | 43.5 | 145.7 | 53.8 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income and settlement | 4.9 | 3.6 | 22.8 |
| Reclassification of historical share of MillerCoors' AOCI loss | — | — | 258.2 |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | (0.8) | 10.4 | 22.3 |
| Total other comprehensive income (loss), net of tax | (292.0) | 714.3 | 129.4 |
| Comprehensive income (loss) | 842.6 | 2,302.1 | 1,729.2 |
| Comprehensive (income) loss attributable to noncontrolling interests | (16.1) | (24.7) | (3.0) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 826.5 | $ 2,277.4 | $ 1,726.2 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Sales | $ 13,338.0 | $ 13,471.5 | $ 6,597.4 |
| Excise taxes | (2,568.4) | (2,468.7) | (1,712.4) |
| Net sales | 10,769.6 | 11,002.8 | 4,885.0 |
| Cost of goods sold | (6,584.8) | (6,236.7) | (2,999.0) |
| Gross profit | 4,184.8 | 4,766.1 | 1,886.0 |
| Marketing, general and administrative expenses | (2,802.7) | (3,052.0) | (1,597.2) |
| Special items, net | 249.7 | (36.4) | 2,532.9 |
| Equity income in MillerCoors | — | — | 500.9 |
| Operating income (loss) | 1,631.8 | 1,677.7 | 3,322.6 |
| Other income (expense), net | | | |
| Interest expense | (306.2) | (349.3) | (271.6) |
| Interest income | 8.0 | 6.0 | 27.2 |
| Other pension and postretirement benefits (costs), net | 38.2 | 47.4 | 8.4 |
| Other income (expense), net | (12.0) | 1.4 | (32.5) |
| Total other income (expense), net | (272.0) | (294.5) | (268.5) |
| Income (loss) before income taxes | 1,359.8 | 1,383.2 | 3,054.1 |
| Income tax benefit (expense) | (225.2) | 204.6 | (1,454.3) |
| Net income (loss) | 1,134.6 | 1,587.8 | 1,599.8 |
| Net (income) loss attributable to noncontrolling interests | (18.1) | (22.2) | (5.9) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ 1,116.5 | $ 1,565.6 | $ 1,593.9 |
| | | | |
| Net income (loss) attributable to Molson Coors Brewing Company per share: | | | |
| Basic | $ 5.17 | $ 7.27 | $ 7.52 |
| Diluted | $ 5.15 | $ 7.23 | $ 7.47 |
| | | | |
| Weighted-average shares outstanding: | | | |
| Basic | 216.0 | 215.4 | 212.0 |

39.     On this news, Molson Coors' stock price fell $6.17 per share, or 9.44%, to close at $59.19 per share on February 12, 2019.  The Company's stock price has not recovered.

40.     As a result of the Individual Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, the Company has been damaged.

## THE INDIVIDUAL DEFENDANTS' DUTIES

41.     By reason of their positions as officers, directors, and/or fiduciaries of Molson Coors and because of their ability to control the business and corporate affairs of Molson Coors, the Individual Defendants owed Molson Coors and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Molson Coors in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Molson Coors and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Molson Coors and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

42.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Molson Coors, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Molson Coors, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

43.     To discharge their duties, the officers and directors of Molson Coors were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Molson Coors were required to, among other things:

> a.      Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b.      Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

c.      Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results; and

d.      When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

44.     All of the Individual Defendants were required at all times to comply with Molson Coors' Board of Directors' Charter and Corporate Governance Guidelines.   Specifically, these requirements include:

**Loyalty and Ethics.** In their roles as directors, all directors owe a duty of loyalty to the Company. This duty of loyalty mandates that the best interests of the Company take precedence over any interests possessed by a director. The Company has adopted the Code, including a compliance program to enforce the Code. Certain portions of the Code deal with activities of directors, particularly with respect to transactions in the securities of the Company, potential conflicts of interest, the taking of corporate opportunities for personal use, and competing with the Company. Directors should be familiar with the Code's provisions in these areas and should consult with the Company's Chief Legal & Corporate Affairs Officer, its Deputy Chief Legal Officer or its Vice President, Ethics and Compliance in the event of any potential issues. All directors and employees are required to affirm the Code on a periodic basis.

\*\*\*

**Contact with Management**. All directors are invited to contact the Chief Executive Officer at any time to discuss any aspect of the Company's business. Directors also have complete access to other members of management. The Board expects that there will be frequent opportunities for directors to meet with the Chief Executive Officer and other members of management, at Board and committee meetings and in other formal or informal settings. Further, the Board encourages management to, from time to time, bring other company employees into Board and Committee meetings who: (a) can provide additional insight into the items being discussed because of personal involvement and substantial knowledge in those

areas; and/or (b) have future potential such that the senior management believes they should be given exposure to the Board.

45.     As members of the Company's Audit Committee, Defendants Eaton, DeVita, Hobbs, and Herington were also required to comply with Molson Coors' Audit Committee Charter ("Audit Charter"). Among other things, the Audit Charter expressly states that the primary purpose of the Audit Committee is to assist the Board of Directors' oversight of (1) the integrity of the Company's financial statements, (2) the independent auditor's qualifications, independence and performance, and (3) the performance of the Company's internal controls and procedures.

46.     The Audit Charter specifically requires the Audit Committee to:

**Interim Financial Statements and Earnings Releases:**

1. Meet and review the interim financial statements, and the Company's disclosures under Management's Discussion and Analysis of Financial Condition and Results of Operations, with management and the independent auditors prior to the filing of each of the Company's Quarterly Reports on Form 10-Q.

2. Discuss generally with management and the independent auditors the type and presentation of information to be included in the Company's earnings releases and guidance provided to investors, analysts, and other stakeholders.

3. Discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the independent auditors under auditing standards established from time to time by the PCAOB and by SEC rules.

\*\*\*

**Annual Audited Financial Statements:**

1. Meet and review with management and the independent auditors the financial statements to be included in the Company's Annual Report on Form 10-K (or any annual report to stockholders if distributed prior to the filing of the Form 10-K), including:

(1) their judgment about the quality, not just acceptability, of the Company's accounting principles, including significant financial reporting issues and judgments made in connection with the preparation of the financial statements;

(2) the clarity of the disclosures in the financial statements; and

(3) the Company's disclosures under Management's Discussion and Analysis of Financial Condition and Results of Operations, including critical accounting policies. 2. Based on these reviews, make a recommendation to the Board as to whether the audited financial statements should be included in the Company's Annual Report on Form 10-K.

3. Review with management and the independent auditors:

(1) major issues regarding accounting principles and financial statement presentations, including significant changes in the selection or application of accounting principles;

(2) major issues regarding the adequacy of internal controls and steps taken in light of material deficiencies; and

(3) the effects of regulatory and accounting initiatives on the financial statements.

4. Discuss:

(1) the results of the annual audit;

(2) any difficulties the independent auditors encountered in the course of their audit work, including any restrictions on the scope of the auditors' activities or on access to requested information, and any significant disagreements with management; and

(3) management's response to any difficulties encountered in the course of the auditors' audit work. The Committee will also discuss any other matters required to be communicated to the Committee by the independent auditors under auditing standards established from time to time by the PCAOB and by SEC rules, and the annual report on internal controls by the Chief Executive Officer and Chief Financial Officer, as reviewed by the independent auditors.

**Internal Controls, Disclosure Controls and Procedures:**

1. Discuss with management, Internal Audit and the independent auditors the Company's internal controls (with particular emphasis on the scope and performance of the internal audit function) and review and discuss with the Internal Audit the results of the internal audit program.

2. Review and discuss the Company's systems of internal control over financial reporting and disclosure controls and procedures, and the adequacy and effectiveness of assessments of such controls and procedures by the Chief Executive Officer and Chief Financial Officer.

3. Inquire of the Company's management as to the existence of any significant deficiencies in the design or operation of internal controls that could adversely

affect the Company's ability to record, process, summarize and report financial data, any material weaknesses in internal controls, and any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

47.     Plaintiff has owned Molson Coors stock continuously during the time of the wrongful course of conduct by the Individual Defendants alleged herein and continues to hold Molson Coors stock.

48.     Plaintiff will adequately and fairly represent the interests of Molson Coors and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

49.     At the time this Action was commenced, the Board consisted of the following fourteen (14) directors: Coors, Molson, J. Coors, T. Molson, Hunter, DeVita, Herington, Tough, Hobbs, Riley, Napier, Vachon, Ferguson-McHugh, and Eaton.

50.     Plaintiff has not made a demand on the Board to bring suit asserting the claims against the Individual Defendants, because such a demand would be futile, wasteful and a useless act.

51.     The directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this lawsuit for the following reasons.

52.     Demand is futile as to Coors, Molson, J. Coors, T. Molson, and Hunter because according to the Company's April 5, 2018 proxy statement filed with the SEC, the Board has determined that Coors, Molson, J. Coors, T. Molson, and Hunter are not independent.

53.     Demand is further futile as to Hunter because his primary principal professional occupation is his employment with Molson-Coors as its President and CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.

54.     During the Relevant Period, the Audit Committee Defendants (Eaton, DeVita, Hobbs, and Herington) served on the Company's Audit Committee. Pursuant to the Audit Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the Company's annual and quarterly financial reports, and press releases, and reviewing the integrity of the Company's internal controls.  The Audit Committee Defendants breached their fiduciary duties of due care, loyalty and good faith because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures, and caused the above-discussed internal control failures. Therefore, defendants Eaton, DeVita, Hobbs, and Herington each face a substantial likelihood of liability for their breach of fiduciary duties and demand upon them would be futile.

## COUNT I
### Against All Individual Defendants For Breach of Fiduciary Duty

55.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

56.     As alleged in detail herein, each of the Individual Defendants had a duty to ensure that Molson Coors disseminated accurate, truthful and complete information to its shareholders.

57.     The Individual Defendants violated their non-exculpable fiduciary duties of loyalty and good faith by causing or allowing the Company to disseminate to Molson Coors' shareholders materially misleading and inaccurate information through, inter alia, SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

58.     As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial controls were maintained in good faith, and, when put on notice of problems with the Company's business practices and

operations by customers, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

59.     The Individual Defendants willfully ignored the obvious and pervasive problems with Molson Coors' internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

60.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Molson Coors, for which they are legally responsible. In particular, the Individual Defendants abused their positions of authority by causing or allowing Molson Coors to misrepresent material facts regarding its financial conduct and business prospects.

61.     The Individual Defendants had a duty to Molson Coors and its shareholders to prudently supervise, manage, and control the operations, business and internal financial accounting, and disclosure of Molson Coors.

62.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Molson Coors in a manner consistent with the duties imposed upon them by the law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence, and candor in the management and administration of Molson Coors' affairs and in the use and preservation of Molson Coors' assets.

63.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II
**Against All Individual Defendants for Unjust Enrichment**

64.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

65.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Molson Coors.

66.     Plaintiff, as a shareholder and representative of Molson Coors, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

67.     Plaintiff, on behalf of Molson Coors, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B.     Directing Molson Coors to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.     Awarding to Molson Coors restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 26, 2019

Respectfully submitted,

**BURG SIMPSON ELDREDGE HERSH & JARDINE PC**

*s/ Meghan C. Quinlivan*
MEGHAN C. QUINLIVAN
40 Inverness Drive East
Englewood, CO 80112
Telephone:  (303) 792-5595
Facsimile:  (303) 708-0527
Email:          MQuinlivan@burgsimpson.com

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

*Counsel for Plaintiff*

## VERIFICATION

I, Stewart Schmier, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action.  I have read the foregoing Complaint and authorized its filing.  Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: _3/11/19_                         _____

                                        Stewart Schmier